ODOM, J.
 

 (dissenting).
 

 I cannot concur in some of the views expressed in the above opinion.
 

 It is conceded by both sides that the gas from this well in its natural state is not fit for domestic consumption, and is therefore worthless. It is stated in the majority opinion that “it appears from the record that until the gasoline is extracted the gas is not fit for domestic consumption,” and it is held that “the lessor is entitled to one-eighth of the value of the gasoline as well as of the gas produced from the lessor’s land, without any deduction whatever.”
 

 The “deduction” referred to is the cost of extracting the gasoline from the gas so as to make it “fit for domestic consumption,” or, in other words, the costs necessarily incurred in rendering the product of the well of some -value.
 

 The lessee paid $1,000 for the lease, which was a sound, substantial consideration, and, under the terms of the lease, it paid all expenses of drilling the well. As an additional consideration for the lease, it agreed to pay the lessor one-eighth royalty for the gas from each well where gas only was found, while the same was being used off the premises.
 

 But, when the gas was reduced to possession and ownership by being brought to the surface of the ground, it was found to be worthless on account of its being “wet,” or having a heavy gasoline content. In its natural state, it could not be used either on or off the premises, and therefore had no value.
 

 So that the lessor and the lessee, at the moment the gas was reduced to possession and ownership, found themselves in the situation of owning, in the proportion of one-eighth to the lessor and seven-eighths to the lessee, a product which was useless to either. Each had performed the obligation assumed under the lease contract, the lessor by permitting the lessee to' explore for gas, and the lessee by paying the price of the lease and making the exploration which resulted in reducing the gas to possession. If the lessor had chosen to do so, he could have taken his one-eighth of the gas as it came from the well in kind, because he owned it. I understand that this is conceded. But he could not compel the lessee to take and pay for his one-eighth. It could not be used off the premises.
 

 Under this lease contract, the lessee obligated itself to pay the lessor one-eighth royalty for the gas “while the same is being used off the premises.” By this it was intended, as I take it, that .the lessee should handle all the gas, both its interest and that of the lessee, and, in ease the lessee made use of- it, it should pay the lessor one-eighth of its value, and, in case it was sold, pay to him one-eighth of the proceeds.
 

 But it was not intended or contemplated that the lessee should pay to the lessor anything unless the gas could be used, and in this case it could not be used in- its natural state. Therefore neither the lessor nor the lessee owned anything of value when the gas was brought in.
 

 But, by separating the gasoline from the gas, there would be left two valuable prod-
 
 *1003
 
 nets, the “dry gas” and the gasoline extracted.
 

 Under such circumstances, it was to the interest of each that the gasoline be extracted from the gas. This process is complicated and very expensive, and neither the lessor nor the lessee had facilities for that purpose. It was for these reasons that the lessee contracted with the Palmer Corporation, which had an extracting plant two and one-half miles away, to give it, as remuneration for extracting the gasoline from the gas, two-thirds of the gasoline extracted, leaving to the lessor and the lessee all the -“dry gas,” which was worth 4 cents per thousand cubic feet, and one-third of the gasoline, owned in the proportion of one-eighth to the lessor and seven-eighths to the lessee.
 

 The giving to the Palmer Corporation of ¡two-thirds of the gasoline extracted for extracting it from the gas can be viewed in no light other than a payment of the expense of converting a worthless product, the gas in its natural state, into two valuable elements, dry gas and gasoline.
 

 But the plaintiff in this case, the lessor, who has an interest in the gas as it comes from the well, and who would be helpless and unable to realize anything from the lease unless some such arrangement were made, is not willing to bear his share of this expense, and the majority opinion holds that he need not do so. It holds that the lessee must bear all the expense, that it must pay to the lessor the value, not of his one-eighth of the one-tliird of the gasoline left after paying the Palmer Corporation, but the value of one-eighth of the whole quantity extracted.
 

 The underlying reason for this holding is that the lessor, being entitled to a one-eighth royalty in the gas, is entitled to the same royalty in all it contains. I find no fault with that reasoning. It is well founded in equity, and there is jurisprudence to support it.
 

 But in my opinion the holding that this plaintiff, the lessor, is entitled, under the circumstances here shown, to a one-eighth royalty in the gross amount of gasoline extracted from the gas, is not well founded either in law or equity, and I know of no jurisprudence to support it.
 

 The case of Wemple v. Producers’ Oil Co., 145 La. 1031, 83 So. 232, decided by this court, and Gilbreath v. States Oil Corporation (O. C. A.) 4 E.(2d) 232, are cited as authorities.
 

 If either of these cases supports the holding from which I dissent, I confess that my reading of them has been vain.
 

 In each of these cases, the court had under consideration the question whether a lessor under an ordinary mineral lease was entitled to a royalty or his pro rata share of the gasoline produced from casing-head gas, and it was held that he was. Reasoning by analogy, I think these cases support the proposition that a lessor is entitled to his share of the gasoline contained in the gas.
 

 In the Wemple Case it was held that one operating an oil well under an oil and gas lease entitling him to all the oil produced, less one-eighth reserved to the lessor as roy
 
 *1005
 
 alty, who exercises the right to use the vacuum pump process, as a result of which and the consequent lowering of the pressure and the increased flow of gas and the lighter constituent of the crude oil are resolved into vapor which is brought up to the casing-head.
 

 “Whence it is led through coils of water-cooled pipes, the lower temperature of which superinduces the precipitation therefrom of
 
 casing-head gasoline,
 
 while the heavier constituents are brought up at the same time and through a tube inclosed in the same pipe,
 
 such lessee is in no position to deny to the lessor,
 
 as also springing from the lease,
 
 the same royalty * * * that concedes upon the heavier constituents,
 
 which preserve their liquid form,
 
 unless he can shoio that the production of the gasoline involves greater expense, and less profit in proportion, than the production of such heavier constituents.”
 
 (Quotation from syllabus. Italics ours.)
 

 The lessee was not permitted to deduct the alleged extra expense of producing the gasoline from the casing-head gas, because he could not or did not show that “the production of the gasoline involves greater expense, and less profit in proportion, than the production of such heavier constituents,” the oil.
 

 In speaking of the claims made by the lessee, the court said:
 

 “Neither he nor any other witness explains the connection between those items of cost and the separate and distinct expense, whatever it may have been, or may be, incurred in the extraction of the casing-head gasoline from the casing-head gas.”
 

 And on page 1048 of the opinion in 145 La., 83 So. 232, 238, the court said:
 

 “If the treatment of the casing-head gas were shown, in this case, to involve an expense greater in proportion to the value of the product than that incurred in the production and handling of the oil, it would perhaps be proper to increase the allowance to the operator in a like proportion; but no such showing has been made.”
 

 On rehearing Justice Sommerville said: “The comparatively small expense, as shown in the record, for machinery used by defendant in saving casing-head gasoline, would not warrant us in charging the owner [the lessor] with any part thereof.”
 

 In the Wemple Case, the production of gasoline from casing-head gas was a mere incident to the production of the oil, and the extra expense seems to have been trivial.
 

 In the federal case cited the court held that casing-head gas or gasoline derived therefrom was part of the oil, a one-eighth royalty of which had been reserved, and was not natural gas within the meaning of the lease, which contained no reference to gas. It was further held that the lessor was entitled to his one-eighth thereof.
 

 But, in the case at bar, the gas in its natural state was utterly worthless and could be rendered valuable only by the process of extracting the gasoline from it.
 

 The construction of an extraction plant involves an expense vastly out of proportion to the cost of producing the gas. That owned and operated by the Palmer Corporation cost $190,000. A less expensive one might be constructed. If some simple and inexpen
 
 *1007
 
 sive contrivance could have been installed for extracting the gasoline from the gas, such as running the gas through water-cooled coils, or some scheme evolved to save the “drip gasoline” as is sometimes done, I think the Wemple Case might be said to be authority for the holding in this case. But the undisputed testimony is that such could not be done successfully, and that nothing but an extraction plant would suffice to convert this natural gas from a worthless product into substances of value.
 

 I cannot sanction the holding that the lessor, under the circumstances here shown, is entitled to one-eighth of the gross products salvaged from this worthless gas, free from the necessary expenses. All he is entitled to is his one-eighth royalty in the net amount saved.
 

 It is stated in the majority opinion that: “Defendant [the lessee] entered into its contract with the Palmer Company without obtaining plaintiff’s consent, and the agreement is not binding on plaintiff.”
 

 That is true; but plaintiff is not in court trying to set the contract aside. He probably would not do so if he could, because it resulted greatly to his benefit. It enabled him to obtain substantial sums for his gas. He has, in a sense, ratified the contract by receiving his royalty from the gas sold. What he contends is that the lessee should bear all the expense of the salvaging process.